# WHEELING.

## STATE EX REL. v. PECK.

Submitted June 10, 1889.—Decided June 28, 1889.

1. BOND—PLEADING—REMOVAL OF CAUSES.

    Where a suit is brought in a State court and the defendant has been arrested and under the Code, c. 106, s. s. 31, 32, has given bond to answer interrogatories filed before a commissioner of said court or in default thereof to satisfy the decree rendered in said suit, a plea setting up the fact, that said suit has been removed to the United States court, and that no decree has ever been rendered in said suit by the State court, is immaterial.

2. BOND—PRINCIPAL AND SURETY.

    In such case, if a decree has been rendered by the United States court against the defendant, and he fails to answer interrogatories filed before a commissioner of the State court, as required in the condition of said bond, he and his sureties upon said bond will be liable for the amount decreed against him in the United States court.

A. F. Mathews for plaintiffs in error.

J. W. Harris for defendants in error.

ENGLISH, JUDGE:

This was an action of debt brought in the name of the State by Levi Witz, Isaac Witz, William T. Beidler and S.

R. Tregallas, partners in trade under the name, style and firm of Witz, Beidler & Co. against H. A. Peck and others, his sureties, upon a bond with collateral conditions executed, in pursuance of the Code, c. 106, s. 33. It appears, that Witz, Beidler & Co. had instituted a suit in chancery in the Circuit Court of Monroe county against H. A. Peck and others, for the purpose of collecting a debt due from him to them for merchandise amounting to the sum of $1,942.18, and also for the purpose of setting aside certain assignments and conveyances therein mentioned, and alleged to be fraudulent; and that in this chancery proceeding the plaintiffs caused an order of arrest to be issued under the provisions of the Code c. 106, s. s. 30, 31, under which said H. A. Peck was taken into custody and gave the bond with security in pursuance of section 83 aforesaid upon which this suit is predicated, in pursuance of section 33 aforesaid.

The defendants tendered six pleas in writing, and the plaintiffs replied generally to pleas Nos. 1 and 2, which were covenants performed and covenants not broken, respectively; and issues were therein joined. Plaintiffs objected to the filing of pleas 3, 4, 5, and 6, and the court sustained the objection to pleas 3, 5, and 6, and refused to allow them to be filed, and overruled the objection to plea No. 4, allowing it to be filed, to which ruling of the court the plaintiffs excepted.

Plea No. 4 is as follows: "And the said defendants by their attorneys come and pray over the said supposed writing obligatory, and of the condition thereof, which is read to them, and is in the following words: 'Know all men by these presents, that we, H. A. Peck, W. G. Hudgin, W. M. McCormick, George T. McClintoc, Charles H. Hedrick, George W. Graves, Clark Howell, M. M. Ogg, J. N. Alderson, N. B. Sheppard, J. C. Bright, and John Keeney, are held and firmly bound unto the state of West Virginia in the sum of four thousand dollars, to the payment whereof well and truly to be made to the said state we bind ourselves, our heirs and personal representatives, jointly and severally, firmly by these presents. Sealed with our seals and dated this 31st day of December, 1885. The condition of the above obligation is such that whereas, the above-bound H.

A. Peck has been arrested by the sheriff of Monroe county under an order of arrest issued from the clerk's office of the Circuit Court of Monroe county, W. Va., on the 30th day of December, 1885, in the suit of Witz, Beidler & Co. against H. A. Peck and others; now, in case there shall in the said suit be any decree or order on which a writ of *fieri facias* may issue, and within four months after such decree or order is ·rendered or made, interrogatories be filed, under the fourth section of chapter one hundred and forty one of the Code of West Virginia, with a commissioner of the Circuit Court of said county of Monroe, the said H. A. Peck will, at the time the commissioner issues a summons to answer such interrogatories, be in the said county, and will within the time prescribed in such summons file proper answers upon oath to such interrogatories, and make such conveyance and delivery as is required· by the said chapter, or, in case of failure to file such answers and make such conveyance and delivery, that the defendant H. A. Peck will perform and satisfy the said decree or order; now, if the above-bound H. A. Peck shall perform said conditions, then the above obligation to be void; else to remain in full force and effect.' For further plea they say, that the plaintiffs ought not to have or maintain their action aforesaid against them, because they say that·to the said ` supposed writing obligatory in the declaration mentioned there were annexed certain conditions and stipulations, which are in the words following, to-wit: 'Now, in case there shall in said suit (meaning a certain suit then pending in the Circuit Court of Monroe county in which the said Witz, Beidler & Co. were plaintiffs, and said H. A. Peck and others were defendants, under proceedings in which said suit said supposed writing obligatory was executed) be any decree or order in which a writ of *fieri facias* may issue, and within four months after such decree or order is rendered or made interrogatories be filed under the 4th section of chapter one hundred and forty one of the Code of West Virginia with a commissioner of the Circuit Court of said county of Monroe,' that then the said H. A. Peck, at the time the commissioner issues a summons to answer such interrogatories, or these defendants would perform certain other conditions therein specified,

and these defendants say that the said conditions and stipulations above set forth were conditions precedent to the performance of the conditions to be fulfilled and performed upon the part of these defendants, and that these defendants could not perform and fulfill, and were not in law bound or obliged or could be required to perform or fulfill, the conditions imposed on them, except and until said conditions precedent were performed and fulfilled ; and these respondents say that said conditions precedent never have been performed or fulfilled, and they are ready to verify."

The action of the court below in overruling the objection of the plaintiffs to plea No. 4, and allowing the same to be filed is assigned as error. It appears, that during the pendency of said chancery-suit the defendant H. A. Peck appeared in the Circuit Court of Monroe county and moved to quash the attachment, which had been issued therein, and that he also filed a plea in abatement at rules in said cause ; and that on the 18th day of March, 1888, all of the defendants filed their answers in said cause, which were replied to generally ; and on the same day upon petition of the plaintiffs said chancery-suit was removed to the District Court of the United States for the district of West Virginia, sitting at Charleston and exercising Circuit Court powers; and that subsequently the defendants appeared in said chancery-suit in the United States district court, and a decre was rendered in favor of plaintiffs against said H. A. Peck for the sum of $2,148.36, and execution was directed to issue for the said sum thus decreed with interest and costs against said H. A. Peck, and the cause was dismissed as to the other defendants; and on the 2d day of January, 1888, a summons was issued by P. Fontaine, commissioner of said United States court, requiring said Peck to appear before him at his office in the city of Charleston, Kanawha county on the 14th day of January, 1888, at 10 o'clock A. M., to answer certain interrogatories, a copy of which accompanied said summons, which had been filed with him by the plaintiffs in said chancery-suit, which summons was returned by the United States marshal of said district, "Not found in his district ;" and a like summons was issued by M. J. Kester, commissioner of the Circuit Court of Monroe county, reciting the fact, that a de-

cree had lately been rendered against the said Peck by said United States District Court, and commanding him to appear before said commissioner at his office in the town of Union, Monroe county, W. Va., and answer under oath certain interrogatories, which had been filed with him by the plaintiffs in said chancery-suit, which summons was returned by the sheriff of Monroe county, "Not found."

Did the court below err in overruling the objection to said plea No. 4? In considering this question it is necessary to look to and consider the legal consequences of the removal of a cause from a State court into the United States court. It is true, that this chancery-suit was pending in the Circuit Court of Monroe county, W. Va., at the time the defendant Peck was arrested, and the bond was executed, in order that he might be released; and it was not then known or perhaps contemplated, that the case would be removed to the United States court; and the wording of the condition of the bond seems to indicate that it was expected that the case would be proceeded in to final decree in the Circuit Court of Monroe county, but, said cause having been removed to the United States court, we look to the statute in pursuance of which it was removed, and find that "when any suit shall be removed from a State court to a Circuit Court of the United States, any attachment or sequestration of the goods or estate of the defendant had in such suit in the State court shall hold the goods or estate so attached or sequestered to answer the final judgment or decree in the same manner, as by law they would have been held to answer final judgment or decree, had it been rendered by the court, in which such suit was commenced; and all bonds, undertakings or security given by either party in such suit prior to its removal shall remain valid and effectual, notwithstanding said removal." See Supp. Rev. St. U. S. p. 175, § 4. Referring to the Code, c. 141, § 4 we find: "The judgment-creditor may file interrogatories to the debtor and a copy of the judgment with a commissioner of the court wherein the judgment is, or of the circuit court of the county in which the defendant resides or may be found, who shall issue a summons directed," *etc.*

When the bond, on which this suit is predicated, was

executed, the obligation was entered into both by the principal and sureties under the light of these statutes, which formed a part of their contract. In the event of a removal to the United States court the law told them the consequences, that the bond would go with the suit and remain valid and effectual; and, although it was contemplated at the time, when the bond was given, that the judgment would be rendered in the State court, yet the said Peck and his sureties executed said bond with a full knowledge, that the case could be removed to the United States court, and that if it should be so removed and a judgment should be rendered therein, the obligation of said bond could be enforced against them, unless the condition was complied with by answering said interrogatories, where the law provides they should be answered, before a commissioner of the court, wherein the judgement is. I therefore, think that it was not a condition precedent to the recovery in this action, that interrogatories should be filed before a commissioner in said county of Monroe, or that the defendant, Peck, should be summoned before such commissioner in Monroe county to answer the same; but if such was the case, he had an opportunity of complying with the condition of his bond by being in the county of Monroe and answering the interrogatories, which he was summoned to answer before a commissioner of that county within four months after said decree was rendered.

In the case of *Levy* v. *Arnsthall*, 10 Gratt. 641, the court in the first point of the syllabus hold, that the act of March 31, 1851, (a statute very similar to the one under consideration,) authorizing a plaintiff in an action to require security in certain cases from the defendant, constitutes the relation of principal and bail between the defendant and his surety, and it is the right of the surety to surrender his principal; and in the second point of the syllabus the court hold, that by the act of April 16, 1852, c. 92, § 4, p. 77, authorizing the plaintiff to file interrogatories to a defendant in custody, and authorizing the court upon notice to the plaintiff or his attorney to discharge defendant from custody applies to a defendant in custody of his bail as well as a defendant in jail.

The order of arrest provided in the Code c. 106, s. s. 31,

32 was intended as a substitute for the writ of *capias ad respondendum;* and it will be noticed that section 31 provides, that " when sufficient cause shall be shown for the arrest of a defendant as aforesaid, such court, judge or clerk shall make an order directing the defendant to be arrested and held to bail for such sum, as the said court, judge or clerk shall think fit; and the plaintiff shall thereupon deliver to the clerk of the court, in which the action is pending a bond in the penalty of double the amount sworn to," *etc.;* and after the defendant has been arrested, if he gives bond, he is relieved from the necessity of going to jail but is still considered to be in custody of his sureties, who have covenanted, " that in case there shall be in the action or suit any judgment, decree or order, on which a writ of *fieri facias* may issue, and within four months after such judgment, decree or order is rendered or made, interrogatories be filed under the fourth section of chapter 141 with a commissioner of the court wherein such decree or order is, the defendant will at the time the commissioner issues a summons to answer such interrogatories be in the county, in which such commissioner may reside, and will within the time prescribed in such summons file proper answers, *etc.* and make such conveyance and delivery, as is required by said chapter, or in case of failure to file such answer or make such conveyance and delivery that said defendant will perform and satisfy said judgment, decree or order;" and by section 35 of the same chapter the court; in which a case is pending or the judge thereof in vacation may after reasonable notice to the plaintiff or his attorney or counsel quash the order and discharge the defendant from custody or discharge the bond on being satisfied, that the same was wrongfully obtained, *etc.*,—thus giving the defendant or his sureties an opportunity at any time to test the validity of said bond or show, that it was obtained upon false suggestions.

This suit was instituted in Monroe county, the declaration was filed in the Circuit Court of that county, and the arrest was made in that county, and, at the time the bond was given, it was contemplated, that the suit would terminate in that county, and for that reason the condition of the bond provides, that the interrogatories should be answered before

a commissioner of that county; but the law, which formed a part of the contract, and which the obligors in said bond are bound to take notice of, provides, that the defendant may be discharged from the obligation of said bond, in case there shall in the action or suit be any judgment, decree or order on which a writ of *fieri facias* may issue and said defendant shall within four months after such judgment or decree is rendered or made, and interrogatories be filed under the fourth section of chapter 141 of the Code, with a commissioner of the court, wherein such judgment, decree or order is, and, at the time the commissioner issues a summons to answer such interrogatories, by being in the county in which such commissioner resides.

While it is true that this decree was rendered in the United States court, and a writ of *fieri facias* was directed to issue by that court, this decree was rendered on the 3d day of November, 1887; and on the 4th day of December, 1887, a summons was issued by M. J. Kester, commissioner of the Circuit Court of Monroe county, requiring said H. A. Peck to appear at his office, in Union, Monroe county, W. Va., on the 21st of December, 1887, to answer under oath interrogatories, which had been filed with him by the plaintiffs, Witz, Beidler & Co., *etc.*, reciting that a decree had been rendered against said H. A. Peck by the District Court of the United States, which summons was accompanied by a copy of said interrogatories, which summons was returned by the sheriff of that county, "Not found in my balliwick." A like summons was issued by a commissioner of the United States court, accompanied by said interrogatories and placed in the hands of the United States marshal within four months after the date of said decree, and returned, "Not found." By said fourth section of chapter 141 that the interrogatories may be filed with a commissioner of the Circuit Court of the county, in which the defendant resides or may be found.

The place of H. A. Peck's residence was Monroe county, and within four months, after this decree was rendered, these interrogatories were filed before a commissioner of the Circuit Court of Monroe county, and a summons issued requiring him to appear and answer the same on oath on the 21st day of December, 1887, and the sheriff returns him, "Not

found." If the commissioner of the United States court had issued no summons, I regard said Peck's absence from Monroe county, when the summons was issued by Commissioner Kester, a breach of the conditions of said bond. I do not regard the matters set forth in said plea No. 4 as constituting any defence to said action. It presents an immaterial issue, and should have been rejected.

In the case of *Hopkins* v. *Richardson*, 9 Gratt. 486, eighth point of syllabus, the court held: "The admission of an improper plea is error, and the appellate court will not inquire, whether or not the plaintiff could be injured by its admission."

The judgment of the court below must be reversed, and, the amount of costs recovered by the plaintiffs by the decree rendered in the United States District Court, not appearing in the record, this cause is remanded to the Circuit Court of Monroe county with directions to render judgment for the amount of the decree recovered in the United States District Court and the costs recovered in said court.

REVERSED. REMANDED.